UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PARS ICE CREAM COMPANY, INC., and
PARS ICE CREAM CALIFORNIA, INC.,

    Plaintiffs,

v.                                                                                    Case No. 12-15598
                                                                                       HON. AVERN COHN

CONOPCO, INC., d/b/a UNILEVER,

    Defendant / Counter-Plaintiff,

v.

DAVOUD SADEGHI, SHELLEY TRAYWICK,
PARS ICE CREAM COMPANY, INC., and
PARS ICE CREAM CALIFORNIA, INC.,

    Counter-Defendants.
_____/

**ORDER GRANTING SHELLEY TRAYWICK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 149)**

### I. INTRODUCTION

This is a long-running contentious commercial dispute concerning agreements to distribute ice cream. Pars Ice Cream Company, Inc. ("Pars Michigan") and Pars Ice Cream California, Inc. ("Pars California") (collectively, "Pars") are ice cream distributors. Conopco, Inc., d/b/a Unilever ("Unilever") manufactures ice cream and other frozen dessert products. Davoud Sadeghi ("Sadeghi") is the President of Pars Michigan and Pars California; Shelley Traywick ("Traywick") is Sadeghi's wife and an officer of Pars.

In the initial action, Pars Michigan and Pars California brought suit against

1

Unilever for breach of contract. Unilever subsequently brought counterclaims against Pars as well as third-party claims against Sadeghi and Traywick as guarantors of Pars Michigan's account with Unilever.

Now before the Court is Traywick's Motion for Partial Summary Judgment on Counterclaim Counts IV and V. (Doc. 149). For the reasons that follow, Traywick's Motion is GRANTED.

## II. BACKGROUND[1]

### A. Traywick's Personal Guaranty

Pars Michigan has conducted business with Unilever for over 20 years. For a portion of this time, Pars Michigan bought ice cream from a number of vendors. However, beginning in 2004, Pars Michigan entered into a number of contractual arrangements, which made Pars Michigan the exclusive distributor of Unilever products in Michigan.

On or about March 3, 2004, as part of the business arrangement between Pars Michigan and Unilvever, Sadeghi and Traywick personally guaranteed Pars Michigan's obligations to Unilever. The Unlimited Personal Guaranty stated in relevant part:

> [T]o induce [Unilever] . . . to extend credit to [Pars Michigan] . . . , the undersigned guarantees payment of and promise to pay or cause to be paid to [Unilever] all loans, drafts, overdrafts, checks, notes, and all other debts, obligations, and liabilities of every kind and description . . . , arising out of credit previously granted, credit contemporaneously granted or credit granted in the future by [Unilever] to [Pars Michigan] . . . when due or to the extent not prohibited by law, at the time [Pars Michigan] becomes the subject of bankruptcy or other insolvency proceeding, or is unable to pay its debts when they become due.

---

[1]  The facts described below are taken from Unilever's Response to Traywick's Statement of Material Facts, which consolidates Traywick's statement of material facts with Unilever's responses.

2

### B. The 2004 Freezer Program Agreement

On April 20, 2004, Pars Michigan and Unilever entered into a Distributor Freezer Program Agreement (the "Freezer Program Agreement"). This was the first written agreement between Pars Michigan and Unilever. Prior to its signing, it appears that the business arrangement between Pars Michigan and Unilever was on open account.

The Freezer Program Agreement provided terms and conditions for Unilever to provide Pars Michigan display and storage freezers, pushcarts, and other freezer equipment "to be placed in [Pars Michigan's] retail accounts for merchandising and displaying ice cream and other frozen dessert products." Among the terms and conditions of the Freezer Program Agreement was the requirement that Pars Michigan not participate in a freezer equipment program with any third party, and that it maintained adequate inventory and stock / distribute products deemed necessary by Unilever. The Freezer Program Agreement was signed by Sadeghi as President of Pars Michigan.

### C. The 2005 Preferred Distributor Agreement

On October 1, 2005, Pars and Unilever entered into a "Preferred Distributor Agreement" whereby Pars became the preferred distributor of certain Unilever ice cream products in 16 counties in Michigan (the "Michigan Distribution Agreement"). The Michigan Distribution Agreement was amended on November 27, 2006, to give Pars Michigan exclusive rights to distribute Unilever products throughout the same market. Among the terms and conditions, Pars Michigan was required to use its "best efforts to promote, distribute and sell the products and to exploit the market potential for the

3

products in the territory" but was prohibited from selling Unilever's products outside of the defined territory. The Michigan Distribution Agreement applied to all products sold under the 2004 Freezer Program. The Michigan Distribution Agreement and its amendment were signed by Sadeghi as President of Pars Michigan.

### D. The 2007 Preferred Distributor Agreement

On April 27, 2007, Unilever and Pars Michigan entered into a "Mobile Vending Distributor Agreement" pertaining to territories within California and Arizona (the "California Distribution Agreement"). This gave Pars Michigan exclusive distributor rights to Unilever's products in the southern part of California. The California Distribution Agreement contained the same terms and conditions as the Michigan Distribution Agreement. The California Distribution Agreement was signed by Sadeghi as President of Pars Michigan.

### E. Pars California Is Created

Pars California was incorporated on January 16, 2008. At the time the California Distribution Agreement was signed by Pars Michigan, Pars California did not exist. Commencing in January 2008, Pars California began distributing products pursuant to the California Distribution Agreement.

### F. The 2009 Supplemental Agreement

By 2009, Pars Michigan and Pars California fell substantially behind on paying its product and freezer rent bills.

To settle the parties' existing financial disputes, the parties entered into a Supplemental Agreement on February 27, 2009. This agreement added Pars California

as a contracting party with Pars Michigan, and was signed by Sadeghi as President of Pars Michigan and President of Pars California.  The Supplemental Agreement provided that, "[f]or the purposes of resolving the existing financial disputes between the parties, . . . Pars Michigan and Pars California agree to each be jointly and severally liable to Unilever for any financial obligation owed to Unilever pursuant to [the Michigan and California Distribution Agreements]."

Also in the February 27, 2009 agreement, Sadeghi "reaffirm[ed] the obligations set forth in the personal guaranty provided to Unilever in 2004" and additionally "agree[d] that the personal guaranty applies to both [the Michigan and California Distribution Agreements]."

## G. The Instant Action

On December 20, 2012, Pars filed the instant action alleging, *inter alia*, breach of contract under the Michigan and California Distribution Agreements for improper imposition of freezer rental fees, refusal to recognize promised rebates and other deductions, and failure to supply goods.  Unilever filed the Counterclaim, which included Counts IV and V, on May 5, 2014.

## III. STANDARD OF REVIEW

The summary judgment standard of review under Fed. R. Civ. P. 56 is well known and not repeated here.  Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact drawing "all justifiable inferences in the light most favorable to the non-moving party."  *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

## IV. DISCUSSION

Traywick seeks summary judgment with respect to Counterclaim Counts IV (Breach of Written Agreement/Liability on the Personal Guaranty) and V (Liability for Attorneys' Fees and Costs-David Sadeghi and Shelley Traywick).

**A.**

In Count IV, Unilever asserts that Sadeghi and Traywick are personally responsible for payment of all outstanding obligations owed by Pars Michigan and Pars California, including those incurred pursuant to the Freezer Program Agreement, the Michigan and California Distribution Agreements, and the Supplemental Agreement. Unilever says that both Sadeghi and Traywick, as guarantors of Pars Michigan, are obligated under their personal guaranty to pay Unilever the outstanding amount due.

In Count V, Unilever says that, under the 2004 personal guaranty, it is entitled to fees and costs associated with bringing this action.

**B.**

In her motion for partial summary judgment, Traywick says that her liability under the 2004 personal guaranty to Pars Michigan was extinguished by the 2009 Supplemental Agreement, which made Pars Michigan and Pars California jointly and severally liable for the financial obligations under the Michigan and California Distribution Agreements, and which "reaffirmed" Sadeghi's personal guaranty—but not Traywick's personal guaranty—as to the debts of Pars Michigan and Pars California.

**C.**

The parties agree that the case is controlled under New York law. Traywick cites

*United Natural Foods, Inc. v. Burgess*, 488 F. Supp. 2d 384 (S.D.N.Y. 2007), for the proposition that "[a]n obligation is altered when the debtor is discharged from the original contract and a new contract is substituted in its place. . . . In such a case, the principal is no longer bound to perform the obligation guaranteed, so the guarantor likewise cannot be held responsible for the failure of the principal to perform." *Id.* at 391 (citations and internal quotations omitted). Traywick further says that "an alteration of the contract to which the guaranty applies will serve to discharge the guarantor's obligation unless the guarantor has consented to the alteration." *Arlona Ltd. Partnership v. 8th of Jan. Corp.*, 50 A.D.3d 933, 934 (N.Y. App. 2008).

Traywick says that Unilever is attempting to extend her personal guaranty as to Pars Michigan to the debts owed by Pars California. Traywick says that the 2009 Supplemental Agreement—in which Sadeghi reaffirmed his personal guaranty as to Pars Michigan and Pars California, and in which Pars Michigan and Pars California agreed to be jointly and severally liable to Unilever for debts under the Michigan and California Distribution Agreements—served to discharge her from liability under the 2004 personal guaranty.

Unilever responds that under the 2004 personal guaranty, Traywick is obligated to pay the current and debts of Pars Michigan, regardless of where or when those debts arise. Unilever also notes that the 2007 California Distribution Agreement was signed by *Pars Michigan*—rather than by Pars California, which was not yet in existence. Unilever says that Pars Michigan's decision to expand operations into California did not change Traywick's liability under the personal guaranty, which expressly provided for

7

future extensions of credit from Unilever to Pars Michigan.

**D.**

Based on the extensive history of the relationship between Unilever, Pars Michigan, and finally Pars California, Traywick's has sufficiently demonstrated a material alteration to the underlying basis of her 2004 personal guaranty.

On March 3, 2004, when Traywick signed the personal guaranty to induce Unilever to extend credit to Pars Michigan, Pars Michigan was selling Unilever-manufactured products on open account.

Beginning with the 2004 Freezer Program Agreement, however, the relationship between Pars Michigan and Unilever underwent significant change. The Freezer Program Agreement, as described above, provided for the lease of Unilever-owned freezers to Pars Michigan. More than a year later, the 2005 Michigan Distribution Agreement and its amendment made Pars Michigan the preferred distributor, and then the exclusive distributor, in Michigan. Later, the 2007 California Distribution Agreement similarly made Pars Michigan the exclusive distributor within certain regions in California. Although the personal guaranty stated that Traywick would be liable for "credit granted in the future by [Unilever] to [Pars Michigan]," she signed it while Pars Michigan and Unilever were operating in an open account arrangement. The Freezer Program Agreement and the Michigan and California Distribution Agreements significantly altered the nature of the business relationship between Pars Michigan and Unilever, adding additional rights and, more importantly, obligations to Pars Michigan that were not included at the time Traywick signed the personal guaranty.

8

Further, the 2009 Supplemental Agreement added Pars California as a contracting party, making Pars Michigan and Pars California jointly liable on all the financial obligations arising out of the exclusive distribution of products in certain territories in Michigan, and later, in California.  Again, these additional responsibilities were not present at the time of signing the 2004 personal guaranty, evidenced by the fact that Sadeghi—without Traywick—*reaffirmed* his personal guaranty as to the obligations of Pars Michigan and Pars California.

At no point did Traywick reaffirm her personal guaranty as to Pars Michigan and/or Pars California.  Nor is there any indication that Traywick was given any notice or asked for her consent to the expanding business relationship between Pars Michigan and Unilever, and later with Pars California.  Without Traywick's acknowledgment, these changes constitute a significant alteration of the underlying agreement to which the personal guaranty applied and serve to discharge Traywick's obligations under the personal guaranty.

Count IV of the Counterclaim therefore DISMISSED with respect to Traywick. Similarly, Count V, seeking fees and costs associated with bringing this action, is DISMISSED with respect to Traywick.

### V. CONCLUSION

For the above reasons, Traywick's Motion for Partial Summary Judgment has been granted.

SO ORDERED.

s/Avern Cohn<br>
UNITED STATES DISTRICT JUDGE

Dated: August 10, 2015

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 10, 2015, by electronic and/or ordinary mail.

<u>s/Marie Verlinde for s/Sakne Chami</u>
Case Manager, (313) 234-5160